UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

U.M. (xxx-xx-9108)                          CIVIL ACTION NO. 09-cv-1426

VERSUS                                      JUDGE HICKS

U.S. COMMISSIONER SOCIAL                    MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

U.M. ("Plaintiff") was born in 1961 and served in the navy from 1982 to 1986, when she received an honorable discharge.  She then worked a series of manual labor type jobs, none for any significant stretch of time.  She was the victim of a hit-and-run accident in 1991 that caused severe damage to her left knee and required surgical repair.  Plaintiff was able to obtain disability benefits in 2001, but her benefits ceased when she was incarcerated on an assault charge a few years later.  Plaintiff reported, during her incarceration, that she injured her knee by falling in the shower and during a volleyball game.

Plaintiff applied for benefits after her release from custody.  ALJ Larry Butler conducted a hearing and issued a written decision to deny benefits.  The Appeals Council denied a request for review.  Plaintiff then filed this civil action seeking the limited judicial review that is available under 42 U.S.C. § 405(g).

**Issues on Appeal**

Plaintiff asserts three errors on appeal.  She argues that the ALJ (1) erred at step three of the analysis by failing to adequately discuss whether Plaintiff's impairments meet or equal listings 1.02 or 1.03, (2) failed to evaluate the side effects of a pain medication, and (3) improperly relied exclusively on the Medical Vocational Guidelines when the presence of significant non-exertional impairments required the testimony of a vocational expert.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

**A.      The Five-Step Review**

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1

of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.  The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

### B.      Summary of the ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity (step one) since her December 2006 application date.  He found at step two that she had the following severe impairments:  status post distal femoral fractures, left leg; status post open reduction and internal fixation, femoral fractures, left leg, with residual significant varus deformity and early medial compartment degenerative joint disease, left leg; right knee pain; status post right iliac crest surgery; and a history of drug use.

The ALJ made a one-sentence finding that Plaintiff does not have impairments that meet or equal a listed impairment (which are so severe as to require a finding of disability without regard to a claimant's age, education, or work experience).  He then determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, subject to some minor limitations. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  A

sedentary job involves sitting, but a certain amount of walking and standing is often necessary to carry out job duties. A job is  sedentary if walking and standing are required occasionally (up to a total of 2 hours per workday) and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a);  Social Security Ruling 83-10.

The ALJ found at step four that Plaintiff is unable to perform any of her past relevant work as a laborer.  He then turned to step five, which asks whether the claimant is capable of performing the demands of other jobs that exist in significant numbers.  He looked to Medical Vocational Rule 201.27, which directs a finding of not disabled for a person with Plaintiff's RFC, age, education, and work experience.

### C.    Discussion of the Listings

Plaintiff's representative argued at the hearing that Plaintiff might meet listings 1.02 (major dysfunction of a joint) or 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint).  Tr. 52. As noted above, the ALJ's written decision devoted a single, conclusory sentence to the listing step. The listings urged by counsel were not mentioned.

The ALJ in Audler, 501 F.3d at 448 made a similar conclusory step-three finding without so much as identifying the listed impairment for which the symptoms failed to qualify or giving any explanation as to how she reached the conclusion that the symptoms were insufficiently severe to meet any listed impairment.   That bare conclusion was inadequate to permit meaningful judicial review.  The Fifth Circuit then looked to whether

the step-three error was harmless, because procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. There was medical evidence to suggest the claimant in Audler might satisfy a listing, so reversal and remand were ordered.

Listings 1.02  and 1.03 are defined as:

1.02  *Major dysfunction of a joint(s) (due to any cause):*  Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A.  Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or

B.  Involvement of one major peripheral joint in each upper extremity . . .

1.03  *Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

Each require, as they might apply to this case, an "inability to ambulate effectively, as defined in 1.00 B2b."  That regulation defines inability to ambulate effectively as "an extreme limitation of the ability to walk" that "interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities."  It is defined generally as having insufficient lower extremity functioning to permit independent ambulation "without the use of a hand-held assistive device(s) that limits the functioning of both upper

extremities."   Examples of ineffective ambulation include, but are not limited to, "the inability to walk without the use of a walker, two crutches, or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation," and the like.

Plaintiff testified at the 2008 hearing that the various rods and screws in her leg were coming loose, to the point that her knee often gets stuck as she is walking, causing her to fall. Plaintiff said it happens at least three times each day, and she must then physically bang the rod back into place.  Tr. 38-39.  Plaintiff said she had been prescribed a cane and a knee brace, and she was also using crutches at the time of the 2008 hearing.   Tr. 36.   A consultative examiner had stated in 2007 that Plaintiff was not using an assistive device at the time of the exam (Tr. 208-09), but later records do make reference to the knee brace, cane, and crutches, about which Plaintiff testified.  (Tr. 355-56, 358).

Some of this evidence was submitted to the Appeals Council after the ALJ's decision. The Council considered the evidence but found it did not require a different result.  Tr. 1. The court's review of whether there is substantial evidence for the Commissioner's decision must include consideration, in these circumstances, of the evidence that was submitted for the first time to the Appeals Council.  Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005).

Plaintiff's counsel raised the listing issue at the ALJ hearing.  She also made a written, detailed argument regarding the listings in her written submission to the Appeals Council.

Tr. 180-81.  Plaintiff has articulated a good-faith argument, supported by record evidence to suggest a significant likelihood that she might meet or equal a listing.  It is certainly an issue that warrants discussion in a decision of the case. The court had some initial doubts about Plaintiff's ability to satisfy the "inability to ambulate effectively" requirement, but the above discussion shows that there is evidence to support the possibility that factor is satisfied.  The medical requirements of the listing also find adequate support in the record to warrant more than a conclusory dismissal of Plaintiff's specific argument on the step-three issue.  Under these circumstances, the appropriate step for the court is to reverse the Commissioner's decision and remand the case for further proceedings, so as to permit the agency the ability to address the listing argument.  Plaintiff, if not satisfied with the outcome, may then apply to this court for review of the decision under the substantial evidence standard.

### D.    Medication Side Effects

At the fifth step, determining whether Plaintiff is able to perform work that is available in the national economy, the Commissioner may meet his burden of proof by looking to the Medical Vocational Guidelines found at 20 C.F.R. §404, Sub-part P, Appendix 2.  The Commissioner may rely exclusively on the Guidelines if (1) the claimant suffers only from exertional impairments or (2) the claimant's non-exertional impairments do not significantly affect his RFC.  Id. § 404.1569; Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If non-exertional impairments do significantly affect the plaintiff's RFC, the Commissioner may look to the Guidelines for guidance but must also look to expert

vocational testimony or other similar evidence to meet his burden of proving that such jobs exist. Fraga, supra.

The regulations require the Commissioner to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take [s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(IV). See Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir.1999). Limitations caused by side effects must be taken into consideration when determining whether a claimant is disabled. The absence of a direct discussion of a claim of drowsiness or other side effect, which could be a significant non-exertional impairment, may deprive the agency decision of substantial evidence to support it and preclude an informed appellate review. C.A.B. v. Astrue, 2009 WL 3156544 (W.D. La. 2009).

Plaintiff testified at her hearing that her physician had started giving her Synvisc injections to help her knee.  The ALJ then asked Plaintiff if she was taking any medications. Plaintiff answered yes, and the ALJ asked Plaintiff if she had side effects from the medications.  Plaintiff answered, "They knock me out."  She went on to say that she is supposed to take her medication three times a day, but she can take it once or twice a day and will sleep for the rest of the day.  She said that she was "out for the rest of the day" about 30 minutes after taking the medicine.  Tr. 34-35.  Plaintiff's medications included Flexeril, a muscle relaxant, and Tramadol, a pain reliever.  Reference sources state that these drugs may cause drowsiness.

The ALJ, in discussing Plaintiff's testimony, wrote that Plaintiff "stated that her doctor gives her injections but the shots knock her out." Tr. 14. He later found "no evidence to support claims that injections caused her to sleep for most of the day." Tr. 16. This discussion did not adequately address Plaintiff's testimony that her daily medication, not the occasional injections, caused her drowsiness. An ALJ need not discuss every piece of evidence in the record, but he may not ignore a significant line of evidence that is in contradiction to his findings and that could reasonably cast doubt on the result. <u>Rey v. Commissioner</u>, 2009 WL 249702, *2 (W.D. La. 2009). The decision in this case did not adequately address the specific testimony that the daily medication caused severe drowsiness. The ALJ did generally discuss Plaintiff's credibility, but that general discussion is inadequate in light of the apparent oversight of the nature of Plaintiff's testimony about her side effects. This issue also warrants reversal and remand.

**Conclusion**

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters. <u>See</u> 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). <u>See also</u> Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand). If Plaintiff is found to suffer significant non-exertional

impairments (such as drowsiness from medication), the agency may also need to obtain testimony of a vocational expert, as urged by Plaintiff.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be remanded to the Commissioner for further proceedings.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of January, 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE